Egan Jr., J.
(dissenting). I agree with the majority that membership in respondent New York State and Local Retirement System ceases upon death. But this case is not about whether Richard O’Brien, an Investigator for the State Police and petitioner’s husband (hereinafter decedent), was or was not a member of the Retirement System as of a particular moment in time; it is about whether a written application for disability retirement benefits completed by petitioner on decedent’s behalf prior to his death but received by the Retirement System via fax minutes after his death was timely filed. Reading Retirement and Social Security Law § 363-b in isolation, one could perhaps conclude that a retirement application had to be physically filed with respondent Comptroller before a member died and that receipt of those papers at any time after death — even seven minutes later — would be too late. If that were the rule, the denial of petitioner’s application by the Comptroller — and the result reached by my colleagues — would be defensible although harsh. But, in my view, Retirement and Social Security Law § 363-b cannot be read alone; rather, it must be read in conjunction with both Retirement and Social Security Law § 19 and 2 NYCRR 366.2.
The cited provisions reflect the realities of the modern world — that members do not always file for retirement in person, but also do so by mail or fax. In each case, the statute or regulation employ comparable language. Retirement and Social Security Law § 19 provides that “[w]henever a statute requires that a document be filed with the . . . [C]omptroller *1127 . . . within a prescribed period of time or by a specified date, and such document has been mailed . . . by . . . certified mail, return receipt requested, the document shall be deemed filed on the date of mailing” (emphasis added). Similarly, the regulation provides that “[wjhenever a statute requires that [a] document be filed with the Comptroller . . . within a prescribed period of time or by a specified date, such document will be considered filed on the date that it has been successfully transmitted via facsimile ... to the Retirement System” (2 NYCRR 366.2 [emphasis added]). Notably, both the relevant statute and the subject regulation provide that the document in question is deemed to be filed on the date that it is faxed or mailed — not the precise moment in time that it is successfully received by the postal service or via fax machine. Decedent died on December 7, 2009, and his application for retirement was received on December 7, 2009. Therefore, to my analysis, his application was timely filed — notwithstanding the fact that he died seven minutes before that application actually was received via the Retirement System’s fax machine. Accordingly, I would annul the Comptroller’s determination and grant the petition.
Moreover, even assuming — as the majority posits — that the filing regulation must yield to Retirement and Social Security Law §§ 340 (f) (2) and 363-b, I nonetheless would annul the Comptroller’s determination based upon the unique facts of this case. The record reflects that upon learning of decedent’s debilitating injuries, Neely Jennings, a lieutenant with the State Police, transmitted the disability paperwork via fax machine to Vincent DeLango, a State Police investigator who had been dispatched to St. Luke’s Cornwall Hospital in Orange County where decedent was undergoing treatment. Neely first attempted to transmit the relevant documents to DeLango at 5:28 p.m. When that attempt failed, Neely made a second unsuccessful attempt at 5:32 p.m., followed by a partially successful third attempt at 5:36 p.m. and a final successful attempt at 5:41 p.m. There is no question that decedent was alive throughout this time period.
After petitioner completed the relevant portions of the application and accompanying option election form (hereinafter referred to as the application), DeLango embarked upon a lengthy series of attempts to transmit the document to Jennings, who was to review the application and transmit it to the Retirement System. Beginning at 6:01 p.m., DeLango — utilizing what ultimately entailed three different fax machines — made nine separate attempts to return the completed application to Jennings before finally succeeding at 6:19 p.m. Again, decedent *1128 was alive during this time period. Upon receipt of the completed application at or about 6:20 p.m. (while decedent was still alive), Jennings reviewed the document and faxed it to the Retirement System at 6:30 p.m., where it was received at 6:31 p.m. In the interim, decedent passed away at 6:24 p.m.
It is undisputed that decedent was alive throughout the numerous, repeated attempts to transmit the necessary paperwork to Jennings for filing with the Retirement System and that the completed application was received by the Retirement System only moments after decedent died. It also is undisputed that this minuscule delay (seven minutes) was, as the Hearing Officer correctly found, occasioned solely by “the inferior quality and geographic restrictions of the hospital’s fax machines” — matters that clearly were beyond petitioner’s control. Notably, nothing in the record even remotely suggests that any fraud or deceit occurred here, and it is readily apparent that petitioner and those assisting her — recognizing the dire nature of decedent’s injuries — endeavored to promptly and diligently submit the underlying application in a timely fashion. Under these circumstances, the Comptroller’s decision to deny petitioner the requested benefits is, to my analysis, arbitrary and capricious.
Adjudged that the determination is confirmed, without costs, and petition dismissed.